















TKL     5/24/01    8:19
3:01-CV-00665   MAHER V. INS
*7*
*TRAV.*

ORIGINAL

DANIEL MAHER[1]
A35-945-225
INS Detention Facility
1115 North Imperial Avenue
El Centro, California 92243

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA
### (HON. JUDITH N. KEEP)

| | |
|---|---|
| DANIEL MAHER, | Case No. 01-cv-0665-K (RBB) |
| Petitioners, | |
| v. | TRAVERSE |
| UNITED STATES IMMIGRATION AND NATURALIZATION SERVICE, AND ADELE FASANO, INS DISTRICT DIRECTOR FOR THE SAN DIEGO DISTRICT, | |
| Respondents. | |

## I.
## INTRODUCTION

As set out in Petitioner's habeas corpus petition, where an alien has already entered the United States and there is no reasonably likelihood that a foreign government will accept the alien's return in the reasonably foreseeable future, 8 U.S.C. § 1231(a)(6) does not permit the Attorney General to detain the alien beyond the 90-day statutory removal period. Ma v. Reno, 208 F.3d 815 (9th Cir. April 10, 2000), petition for cert. granted sub nom., 69 USLW 3086 (U.S. Oct 10, 2000)(No. 00-38). The INS's continued detention of Petitioner violates §1231(a)(6) because, given that the government of China has not issued travel documents to effectuate Petitioner's removal, there is "no reasonable likelihood that the alien will be removed in the

---

[1] Petitioner is filing this traverse with the assistance of Jason I. Ser and Federal Defenders of San Diego, Inc. That same counsel also assisted petitioner in preparing and submitting his petition, requests to proceed *in forma pauperis*, and for appointment of counsel.

reasonably foreseeable future." Id. Therefore, Petitioner must be released under conditions in §1231(a)(3).

## II.

## FACTUAL BACKGROUND

Petitioner is a long-time lawful permanent resident of the United States. See Post Order Custody Review Worksheet for File Review and/or Interview (3/29/01) (Attached as Exhibit 1 to Declaration of Jason I. Ser ("Ser Dec.") (Attached hereto)). Respondents initiated removal proceedings on February 17, 2000, upon the issuance of a Notice to Appear. Id. An immigration judge ordered him removed to Macau on May 15, 2000. Id. Petitioner waived appeal of this order making it administratively final that same day. Id.; 8 C.F.R. § 241.1(b).

Respondents requested travel documents from the government of China on May 16, 2000. Id. "A subsequent request for a travel document was sent on June 29, 2000, and to date a response has not been received." Id.

On December 26, 2000, Respondents forwarded Petitioner's case to INS Headquarters in Washington, D.C., for assistance in obtaining travel documents from the government of China. Id.

Respondents conducted an administrative review of Petitioner's detention on March 29, 2000. Id. The panel of officers recommended that Respondents release Petitioner from custody. Id. However, INS Headquarters in Washington, D.C., upon review of Petitioner's detention case and March 29, 2000 administrative review, reversed this recommendation and ordered Petitioner continued in custody. See HQPDU Panel Recommendations (Attached as Exhibit 2 to Ser Dec.).

Because Petitioner cannot be removed to his country of origin, he is being held by the INS based on the INS's misunderstanding of its statutory authority to detain non-removable aliens indefinitely under 8 U.S.C. 1231(a)(6).

## III.

## ARGUMENT

**A.    8 U.S.C. § 1231(a)(6) Does Not Confer Authority upon the INS to Detain Deportable Aliens Beyond the 90-Day Statutory "Removal Period" If There Is No Reasonable Likelihood That Their Country of Origin Will Permit Their Return in the Reasonably Foreseeable Future**

Petitioner's case is on all fours with the controlling authority of Ma v. Reno. 208 F.3d 818-19. Respondent does not contest that an immigration judge ordered Petitioner deported, that this order is final

and that Petitioner entered INS custody more than 90 days ago, which means that the 90-day statutory removal period has expired. Petitioner's prolonged detention, as well as comments and analysis by INS deportation officers contained in Petitioner's custody review documents, support the conclusion that his removal is not reasonably likely in the reasonably foreseeable future. Thus, the holding in Ma warrants his release from custody. See Marcosian v. INS, Case No. 00CV1802-K (POR) (S.D. Cal. Jan. 16, 2000); Mahmodi v. INS, Case No. 00CV0160-K (JFS) (S.D. Cal. Sept. 15, 2000); see also Wong v. INS, Case No. 00CV1878-J (RBB) (S.D. Cal. Nov. 28, 2000), slip op. at 3 (Order Granting Petition for Writ of Habeas Corpus for Philippine national despite existence of repatriation agreement).

The Ma Court held that in enacting 8 U.S.C. § 1231(a)(6), the statutory provision that governs the INS's ability to detain persons after their removal orders have become final, Congress did not grant the INS authority to detain indefinitely aliens who have entered the United States and cannot be removed to their native land. Id. at 821-22. "In cases in which an alien has already entered the United States and there is no reasonable likelihood that a foreign government will accept the alien's return in the reasonably foreseeable future, we conclude that the statute does not permit the Attorney General to hold the alien beyond the statutory removal period." Id. at 822. Rather, the alien must be released subject to the supervisory authority provided in the statute. Id.

This finding applies equally to all aliens with a final order who cannot be removed, regardless of their country of origin or nationality.

> In general, after an alien is found removable, the Attorney General is required to remove that alien within ninety days after the removal order becomes administratively final. Many aliens, however, cannot be removed within the ninety day period for various reasons. First, some individual cases may simply require more time for processing. Second, there are cases involving aliens who have been ordered removed to countries with whom the United States does not have a repatriation agreement, such as Cambodia, Laos, and Vietnam. Finally, <u>there may be those aliens whose countries refuse to take them for other reasons</u>, and yet <u>others who may be effectively "stateless" because of their race and/or place of birth</u>.

Ma, 208 F.3d at 820-821 (emphasis added). Thus, the Ninth Circuit did not premise its holding on which country a particular alien is from, but whether the alien can be removed from the United States to that country at all. "Although Ma involved a petitioner from a country which does not have a repatriation agreement with the United States, the Ninth Circuit did not expressly limit its holding to cases such as Ma's. The holding of Ma logically applies to stateless aliens and those whose countries refuse to take them for various reasons."

Aphayavong, et. al. v. INS, et. al., Case No. 00CV0804-J (S.D. Cal. July 26, 2000)(order granting writ of habeas corpus); see also Marcosian v. INS, Case No. 00CV1802-K (POR) (S.D. Cal. Jan. 19, 2001) (Order granting Writ of Habeas Corpus for Armenian national); Mahmodi v. INS, Case No. 00CV0160-K (JFS) (S.D. Cal. Sept. 5, 2000) (Order Granting Petition for Writ of Habeas Corpus for Irani national).

"Ninth Circuit law clearly states that indefinite detention past 90-days is unreasonable where 'there is no reasonable likelihood that a foreign government will accept the alien's return in the reasonably foreseeable future.'" Wong v. INS, Case No. 00CV1878-J (RBB) (S.D. Cal. Nov. 28, 2000), slip op. at 3 (quoting Ma, 208 F.3d at 818). The district court in Wong noted that the mere existence of a repatriation agreement between the United States and an alien's native country did not preclude inquiry into the lawfulness of petitioner's detention under Ma. Id., slip op. at 2-3. The district court held that refusals by the government of the Philippines to accept Wong's repatriation militated for the conclusion that his detention was unlawful given that repatriation documents would not be available in the foreseeable future and repatriation would not occur. Id., slip op. at 4. Thus, "continued detention [past 90-days] is unreasonable and prohibited under Ma v. Reno." Id.

This Court interpreted the holding of Ma similarly in Marcosian v. INS. Case No. 00CV1802-K (POR) (S.D. Cal. Jan. 16, 2001). In Marcosian, the district court considered whether Respondents had authority to continue to detain an Armenian national beyond the 90-day statutory removal period despite the existence of a repatriation agreement between the United States and Armenia. Id., slip op. at 3. The Court found that Armenia's refusal to issue travel documents indicated petitioner's removal to Armenia was not reasonably likely in the reasonably foreseeable future. Id. Accordingly, the Court applied the Ninth Circuit's holding in Ma v. Reno and held that the INS had no statutory authority to detain the Armenian petitioner beyond the 90-day statutory removal period. Id. This Court should again apply its interpretation of Ma to the instant proceedings and order Respondents to release Petitioner forthwith given that his removal to Iraq is likely in the reasonably foreseeable future, as will be shown below.

B. **Despite the Existence of A Repatriation Agreement, Petitioner's Removal Is Not Likely in the Reasonably Foreseeable Future**

Ma v. Reno is directly applicable to the present case because Petitioner, like Mr. Ma, has been ordered removed to a country that will not provide repatriation documents and thus, he cannot be removed.

His continuous detention by INS since March 20, 2000 has caused him to languish in Respondents' custody for more than a one full year. See Exhibit 1. The immigration judge ordered him removed more than eight months ago on July 6, 2000. Id. Petitioner waived appeal of the immigration judge's order making it administratively final that same day. Id.; 8 C.F.R. § 241.1(b). Thus, no due process impediment, such as an appeal to the Board of Immigration Appeals, precluded Respondents from obtaining travel documents. See 8 C.F.R. § 240.15.

Respondents requested travel documents from the government of China on two separate occasions. See Exhibit 1. Respondents first requested travel documents on May 16, 2000, more than one year ago. Respondents admitted in Petitioner's custody review documents that to date they received no response to this letter. Id. Respondents again requested travel documents on June 29, 2000 from the government of China. Id. However, as Respondents admitted in Petitioner's custody review documents, China has not responded nor has it indicated a willingness to provide travel documents.

Respondents' request for assistance from Headquarters, Washington, D.C., in obtaining travel documents from the government of China is probative of its inability to effectuate Petitioner's removal in the reasonably foreseeable future. See Exhibit 1. According to 8 C.F.R. § 241.4, subsection (g), entitled travel documents and docket control for aliens continued in detention beyond the removal period:

> The district director shall continue to undertake appropriate steps to secure travel documents for the alien both before and after the expiration of the removal period. <u>If the district director is unable to secure travel documents within the removal period, he or she shall apply for assistance from Headquarters Detention and Deportation, Office of Field Operations.</u> The district director shall promptly advise the HQPDU Director when travel documents are obtained for an alien whose custody is subject to review by the HQPDU. The Service's determination that receipt of a travel document is likely may by itself warrant continuation of detention pending the removal of the alien from the United States.

8 C.F.R. § 241.4(g) (2000) (emphasis added). One can infer that Respondents are unable to obtain travel documents for a particular alien subject to a valid order of removal if and when a district director applies for assistance from INS Headquarters in obtaining a travel document for that alien. Thus, at the very moment, it is not reasonably foreseeable that Respondents will obtain a travel document from the government of China to effectuate Petitioner's removal.

Respondents do not state in Petitioner's custody review documents, which INS deportation officers completed as recently as March 29, 2001, that Petitioner has been uncooperative with the INS's efforts to

secure travel documents from the government of Iraq. Id.

Respondents do not state in Petitioner's custody review documents that China's refusal to issue travel documents is due to an administrative delay or any other technical barrier, either of which could be overcome with time. Moreover, Respondents fail to indicate any time by which the government of China will accept Petitioner's repatriation. Petitioner has been detained by the INS beyond the 90-day statutory "removal period" following issuance of his removal order, and thus he must be released by the INS (subject to the INS's supervisory authority as provided by statute) at once.

C.  **This Court Should Not Delay Its Decision in Petitioner's Case Any Further**

Petitioner opposes any request to hold this case in abeyance. As demonstrated above, the panel decision in Ma is dispositive of this petition for writ of habeas corpus. The government nevertheless has invited this Court in similar cases to delay its ruling based almost entirely upon its hope that the Ma decision will be reversed by the Supreme Court. Any request in the instant matter to hold these proceedings in abeyance would be inappropriate and should be denied.

On October 10, 2000, the Supreme Court granted the government's petition for *certiorari* in Ma and consolidated that case with the petitioner's petition for *certiorari* in Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999), cert. granted, (U.S. Oct. 10, 2000) (No. 99-7791). But contrary to the government's assumptions, the Ninth Circuit's holding in Ma remains binding within this Circuit. See, e.g., Wisdom v. Intrepid Sea-Air Space Museum, 993 F.2d 5 (2d Cir. 1993)("prior opinions of a panel of this [Court of Appeals] are binding upon us in the absence of a change in the law by a higher authority or our own in banc proceeding" despite the grant of a petition for *certiorari*); United States v. Brennan, 134 F. Supp. 42 (D.C. Minn 1955) (the grant of a petition for *certiorari* does not affect the decision to be reviewed, but only indicates that the federal question will be resolved by the Supreme Court); Hathorn v. Lovorn, 457 U.S. 255 (1982) (federal questions are resolved by the Supreme Court); see also, e.g., State of California v. Superior Court of Sacramento County, 150 Cal. App. 3d 848, 859 (1984) (citing to Knauff v. Shaughnessy, 88 F. Supp. 607, 609 (S.D. N.Y. 1949), aff'd, 179 F.2d 628 (2d Cir. 1950) and Lakeside Community Hospital v. Tahoe Regional Community Hospital, 461 F. Supp. 1150, 1153 (D. Nev. 1978)); see also Wedbush, Noble, Cooke, Inc. v. Securities and Exchange Commission, 714 F.2d 923, 924 (9th Cir. 1983) (citations omitted).

Further, there is no parallel case pending in this Circuit that would warrant a short stay. Rather, the

"parallel case" in this Circuit, Ma, has resolved all of the issues presented herein in Petitioner's favor and compels granting the petition. Any stay request based upon the government's further appeal in Ma should be denied. Accord Yong v. INS, 208 F.3d 1116 (9th Cir. 2000) (held district court's stay of habeas corpus proceedings pending panel decision in Ma was abuse of discretion); McLellan v. Young, 421 F.2d 690, 691 (6th Cir. 1970) (district court erred in deferring consideration of habeas corpus cases pending a ruling by the Supreme Court in another case, particularly where the court could have ruled on petition simply by following Circuit decision that is "on all fours and is determinative of petitioner's habeas corpus action.").

Equally, the conservation of judicial resources and the promotion of the interests of the INS without undue burden to the Petitioners do not justify a stay. Yong, 208 F.3d at 1119-20. Accord Intel Corp. v. Advanced Micro Devices, Inc., 12 F.3d 908, 912 (9th Cir. 1993) (stay for reasons of "wise judicial administration" when there are concurrent state proceedings involving same matter as in federal court, is narrow and should only be justified by "exceptional circumstances").

Petitioner recognizes the inherent power of the Court to control the disposition of the causes before it, but the federal courts -- including the district courts -- "cannot abdicate [their] role to prevent the ossification of rights which attends inordinate delay." Itel Corp. v. M/S Victoria U, 710 F.2d 199, 202 (5th Cir. 1983) ("Federal courts exist to decide controversy. Those who have, in the common parlance, a 'federal case' deserve its prompt adjudication."). The Ninth Circuit in Yong recognized this well-established principle, which is particularly applicable in the context of habeas corpus litigation, and soundly rejected "conservation of judicial resources" as sufficient justification to stay the proceedings in that case. See Yong, 208 F.3d at 1119-20. For the same reasons set forth in Yong, 208 F.3d at 1119-21, as well as the additional fact that the Ninth Circuit in Ma has now resolved the issues presented such that this Court may rule immediately upon this petition, conservation of judicial resources does not warrant a stay in the instant case.

And, as in Yong, the government's interests in this case are not necessarily served by a stay "in any significant way." 208 F.3d at 1121. The government nevertheless has requested stays in similar cases on the grounds that the request is only for a "brief" time. These alleged facts would not warrant a stay of the proceedings.

Notwithstanding the fact that the government claims to seek only a "brief" stay in other cases, the

request still involves the "indefinite, potentially lengthy stay" frowned upon by the Ninth Circuit in Yong. As the Ninth Circuit in Yong pointed out, "it is quite possible that the appeal in Ma would not be 'resolved' until long after [the Ninth Circuit] issue[ed] [its] decision in that case," because of other avenues available for appealing the decision, e.g., application for certiorari in the Supreme Court. Id. at 1119. While the length of the requested stay in this case may be shorter than that faced by Mr. Yong now that a decision has been rendered by the Court in Ma, it is nevertheless indefinite, because there is simply no definitive end point to the requested abeyance. Yong, 208 F.3d at 1119 (although the stay lasted "only 5 months, its term is indefinite"). More significantly, any such request comes in the face of direct authority in this Circuit compelling the conclusion that this Court should grant Petitioner's writ of habeas corpus without delay. Given Petitioner's current detention, like Mr. Yong's, such a lengthy and categorical stay takes no account whatsoever of Petitioner's interests in bringing the case to resolution.

In sum, the government could not set forth sufficient grounds to warrant any stay of this petition. Under both the Ninth Circuit statutory analysis in Ma, and the constitutional analysis set forth in Phan v. Reno, 56 F. Supp. 2d 1149 (W.D. Wash. 1999), Petitioner's ongoing detention by the INS is unlawful; he is "clearly right as a matter of law so that there can be no substantial question as to the outcome of the case." Groendyke Transport, Inc. v. Davis, 406 F.2d 1158, 1162 (5th Cir.), cert. denied, 394 U.S. 1012 (1969).

Any further delay of this Court's consideration of the merits is inappropriate under these circumstances. See Bouchaleun, et. al., v. INS, et. al., Case No. 01CV0378-IEG (AJB) (S.D. Cal. May 10, 2001) (denying Respondent's request for stay); Saadati v. INS, et. al., Case No. 01Cv0355-K (JFS) (S.D. Cal. April 30, 2001) (same); Aphayavong, et. al., v. INS, et. al., Case No. 00CV0804-J (LAB) (S.D. Cal. Dec. 14, 2000), slip op. at 3-4, n. 3 (rejecting INS's request for a stay holding that "[t]he Ninth Circuit has clearly stated that a District Court may not indefinitely stay a habeas petition").

D. **This Court Should Order Respondents to Release Petitioner Without Prepayment of Bond as a Condition of Release Because Congress Never Intended to Give the INS Authority to Set Bond as a Condition of Release in 8 U.S.C. § 1231(a)(3)**

1. **The Doctrine of Negative Implication Precludes the INS from Asserting That it Has the Authority to Set Bond as a Condition of Release**

"Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the

disparate inclusion or exclusion." INS v. Cardoza-Fonseca, 480 U.S. 421, 432 (1987). Its failure to explicitly permit the use of bond in 8 U.S.C. § 1231(a)(3) is strong evidence that it simply chose not to permit the use of bond in that provision. See Jeffries v. Wood, 114 F.3d 1484, 1496 (9th Cir. 1997) (*en banc*)(the principle of *expressio unius est exclusio alterius*, or negative implication, counsels that "an express declaration as to one item requires the exclusion of others").

In Lindh v. Murphy, 521 U.S. 320, 329 (1997), the Supreme Court used the negative inference argument to construe part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The Court concluded that AEDPA's chapter 153 was inapplicable to pending cases by relying heavily on the observation that AEDPA's chapter 154 included explicit language making it applicable to such cases. The Court concluded that "[n]othing ... but a different intent explains the different treatment." Id. The strength of the negative inference arose from the fact that the two chapters addressed similar issues: Chapter 153 established new standards for review of habeas corpus applications by state prisoners, and chapter 154 created new standards for review of habeas corpus applications by state prisoners under capital sentences. Because both chapters "govern[ed] standards affecting entitlement to relief" in habeas cases, "[i]f . . . Congress was reasonably concerned to ensure that chapter 154 be applied to pending cases, it should have been just as concerned about chapter 153[.]" Id.

Congress prescribed bond as a condition of an alien's release in some sections of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 (Sept. 3, 1996), and not others. Amended 8 U.S.C. § 1226(a)(2)(A) permits the INS to set bond as a condition of release for aliens in deportation proceedings, but still pending a final order of removal. See IIRIRA § 303(a), 8 U.S.C. § 1226(a)(2)(A). Congress also permitted the INS to set bond as a condition of release for aliens who received a final order of deportation, but then received a stay of removal. See IIRIRA § 305, 8 U.S.C. § 1231(c)(2)(C). However, conspicuously absent from the Act's amendments to 8 U.S.C. §1231(a)(3) are any provisions that permit the INS to set bond as a condition of release for an alien who is detained beyond the 90-day statutory removal period. See IIRIRA § 305. Congress considered different situations in which an illegal immigrant might seek release from custody, and decided in what situations the Attorney General was authorized to require a bond as a condition of release, and in what situations a

bond was not authorized. By such an omission, this Court must infer that Congress did not intend for bond to be a permissible condition of release.

Respondent may argue that 8 C.F.R. § 241.5(b) vests the Attorney General with authority to require bond as a condition of release for a non-removable alien. However, this administrative construction is contrary to Congressional intent. The judiciary "must reject administrative constructions which are contrary to clear Congressional intent" when employing traditional tools of statutory construction to review an agency's construction of a statute which it administers. Chevron v. Natural Resources Defense Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed. 2d 694 (1984). Congress spoke to the question of bond when it failed to include it in § 1231(a)(3). This Court should reject the administratively constructed bond provision in § 241.5(b) because the statutory construction canon of negative implication indicates that Congress did not intend to require non-removable aliens to post bond as a condition of release.

This conclusion is consistent with the Ninth Circuit's opinion in Ma. If this court were to conclude that the INS can set a bond that an alien cannot meet, and thus continue to detain that alien forever, the court would run headlong into exactly the same grave substantive due process problems that the Court in Ma avoided through rational statutory construction. 208 F.3d at 822-27. The court can avoid that problem by construing the statute as not authorizing bond as a condition of release, a construction that is eminently reasonable given the doctrine of negative implication discussed above. Moreover, the Ninth Circuit panel in Ma stated that non-removable aliens can be strictly supervised, but said nothing about requiring bond before an alien must be released:

> [O]ur decision does not leave the government without remedies with respect to aliens who may not be detained permanently while awaiting removal that may never take place. All aliens ordered released must comply with the stringent supervision requirements set out in 8 U.S.C. §1231(a)(3). Ma will have to appear before an immigration officer periodically, answer certain questions, submit to medical or psychiatric testing as necessary, and accept reasonable restrictions on his conduct and activities, including severe travel limitations.

208 F.3d at 831. This passage raises the inference that the panel concluded that bond is unauthorized. See also 208 F.3d at 822 ("the alien must be released subject to the supervisory authority provided in the statute").

### 2. In the Alternative, the INS's Construction of § 1231(a)(3) to Include Bond as a Condition of Release for Non-Removable Aliens Is Unreasonable Under the Chevron Analysis

Where an agency must formulate policy and make rules to fill a gap left by Congress either explicitly or implicitly in legislation, that agency's construction is not without limits. A reviewing court must determine whether an agency's construction of a statute which it administers is based on a permissible construction of the statue where Congress has not addressed the precise question at issue, *i.e.*, the statute is silent or ambiguous with respect to the specific issue. Chevron, 467 U.S. at 843-44. Reviewing courts employ two different standard of review depending upon whether the legislative delegation by Congress appears in the statute explicitly or implicitly. Id. at 844. If explicit, the legislative regulation is given controlling weight unless it is "arbitrary, capricious, or manifestly contrary to the statute." Id. If implicit, the question becomes whether the agency's view that a particular policy choice is appropriate is itself reasonable. Id. An agency's interpretation of a legislative delegation that is implicit must demonstrate that the agency balanced conflicting policies and competing interests. Id. at 844-45. A reviewing court also must determine whether the agency's view that the challenged concept is appropriate in the context of the particular program is a reasonable one. Id. at 845.

Section 1231(a)(3) of Title 8 of the United States Code does not explicitly permit Respondent to set bond as a condition of release for non-removable aliens. Assuming that the statute makes any such delegation, it is implicit where § 1231(a)(3) limits the INS's authority to "reasonable written restrictions on the alien's conduct or activities." Thus, the question to be addressed by this Court is whether the INS's position that it can set bond as a condition of release for persons such as Petitioner, who will not be removed in the foreseeable future and who may never be deported, is reasonable.[2]

"Here, the INS's position that it can set bond as a condition for release for persons such as [Petitioners], who will not be deported in the foreseeable future and who may *never* be deported, is patently unreasonable." See Sisalao v. INS, Case No. 00CV0356-IEG (CGA) (S.D. Cal. Oct. 11, 2000), slip op. at

---

[2] Even under the "arbitrary and capricious" standard set forth in Chevron, the INS's bond construction fails. Respondent has admitted in similar cases that the only interest in obtaining bond is to offset flight risk. The assertion that bond is required to guarantee Petitioners' appearances for removal in the future is untenable given this Court's implicit finding in granting the writ that Respondent cannot remove Petitioners anytime in the reasonably foreseeable future.

7; see also Wong v. INS, Case No. 00CV1878-J (RBB) (S.D. Cal. Dec. 14, 2000) (expressly adopted rationale and holding of Judge Gonzalez' opinion in Sisalao and determined that the INS lacks statutory authority to condition an indefinite detainee's release pursuant to Ma on the posting of bond); Aphayavong, et. al., v. INS, et. al., Case No. 00CV0804-J (LAB) (S.D. Cal. Dec. 14, 2000) (held INS was not authorized by 8 U.S.C. § 1231(a)(3) to impose bond as a condition of release for anyone to whom the holding in Ma applies); Rithy v. INS, Case No. 00CV0789-IEG (CGA) (S.D. Cal. Oct. 16, 2000) (ordered INS to release Cambodian petitioner "upon reasonable conditions of release other than the setting of a bond"). The conclusion that Congress did not intend to permit the Attorney General to require bond in this context makes sense. If Congress did not intend to allow the INS to detain non-removable aliens indefinitely, as the Ninth Circuit held in Ma, it is also logical to assume that Congress did not intend that such individuals be required to post bond to secure their release. That is, if Congress did not want to give the INS authorization to hold people who cannot be deported forever, *i.e.*, it intended to respect such people's right to liberty at some point, then it also probably intended that they should be released regardless of whether they could post a bond. See Sisalao, supra, slip. at 7 ("there is no good reason to set bond for an alien except to secure the alien's presence for eventual deportation . . . [thus,] [a]nyone to whom Ma applies, ipso facto, is someone for whom there is no good reason to set bond"). "'[O]nce it becomes evident that deportation is not realizable in the future, the continued detention of the alien loses it *raison d'etre*.'" Id. (quoting Zadvydas v. Caplinger, 986 F.Supp. 1011, 1026-27 (E.D. La. 1997), rev'd, Zadvydas v. Underdown, 185 F.3d 279 (5th Cir. 1999)). Thus, Respondent has no interest in requiring bond and this Court need not weigh the competing policy interest. Respondent's interpretation that § 1231(a)(3) permits it to require a non-removable alien to post bond as a condition of release is unreasonable.

## CONCLUSION

Petitioner respectfully requests that this Court order a writ of habeas corpus.

Dated: May 21, 2001

Respectfully submitted,

/s/ Daniel Maher

Daniel Maher
Petitioner

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MAHER, | ) | Case No. 01-cv-0665-K |
|     Petitioners, | ) ) ) | |
| v. | ) ) | PROOF OF SERVICE |
| IMMIGRATION AND NATURALIZATION SERVICE, et. al., | ) ) ) | |
|     Respondents. | ) ) | |

I, the undersigned, say:

1) That I am over eighteen years of age, a resident of the County of San Diego, State of California, and not a party in the within action;

2) That my business address is 225 Broadway, Suite 900, San Diego, California, 92101;

3) That I served the within TRAVERSE; DECLARATION OF JASON I. SER AND EXHIBITS by placing a true copy of the above-mentioned document in the United States mail on May 23, 2001, to:

    Samuel Bettwy
    Special Assistant U.S. Attorney
    880 Front Street Room 6293
    San Diego, CA 92101-8893

I certify under the laws of the State of California that the foregoing is true and correct. Executed on 23 May 2001 at San Diego, California.

                                _____
                                SYLVIA FREEMAN